# Exhibit 2

FILED
MAY 08 2021
Clerk of the Court
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

SUPERIOR COURT STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| In re the Marriage of:<br><br>Petitioner: PATRICE DARISME<br><br>and<br><br>Respondent: PRINCESCA ENE | Case No. 2015-6-FL014081<br><br>**JUDGMENT AFTER TRIAL**<br><br>Trial Dates: February 11 through December 16, 2020 (various)<br>Date Submitted: December 16, 2020<br>Hearing re Attorneys' Fees: March 24 and April 21, 2021<br>Dept.: 10<br>Judge: Hon. Roberta S. Hayashi |

On February 11, February 13, February 14, February 20, February 21, March 2, March 4, October 26, October 27, October 28, November 18, December 10, and December 16, 2020, the Parties brought on for trial the issues of (1) Division of Property and Reimbursements; (2) Petitioner Patrice Darisme's ("Petitioner" or "Husband" or "Mr. Darisme") Request for Findings and Orders based upon Respondent Princesca Ene's ("Respondent" or "Wife" or "Ms. Ene") Breach of Fiduciary Duty under the Family Code; (3) the Parties' respective Requests for Orders re Contempt; and (4) Petitioner's Request for Temporary Restraining Order (filed October 20, 2020). Petitioner appeared with and through his counsel Walter Pierce Hammon, Cory Hammon and John D. Pernick. Respondent appeared with and through her counsel Shannon Stein and Pamela Schuur.

Both Parties requested a written Statement of Decision. On January 20, 2021, the Court filed and served its Tentative Decision and Proposed Statement of Decision (the "PSOD"). On February 4, 2021, Petitioner filed and served his Response to the PSOD and Respondent filed and served her Objections to Tentative Decision and Statement of Decision. On or about February 23, 2021, the Court issued its Statement of Decision re Property Division, Reimbursement, and Breach of Fiduciary Duty (the "Statement of Decision").

Thereafter, following briefing and hearings (via MS Teams) on March 24, 2021 (continued from March 3, 2021) and April 21, 2021, the Court awarded to Petitioner Attorneys' Fees and Costs pursuant to Family Code §1101(g) and Sanctions pursuant to Family Code §271.

THE COURT, HAVING HEARD, READ AND CONSIDERED THE TESTIMONY OF THE WITNESSES, THE EVIDENCE AND ARGUMENT (BOTH ORAL AND WRITTEN) AND REVIEWED THE PRIOR ORDERS AS CONTAINED IN THE FILES AND RECORDS OF THE COURT, AND FINDING GOOD CAUSE THEREFORE, HEREBY ORDERS, ADJUDGES AND DECREES:

## I. Division of Assets, Liabilities and Reimbursements

### A. Nano Alloys, Inc.

1. For purposes of the family law action, the community owns at least 50% of the shares of Nano Alloys, Inc. and thus Petitioner is entitled to own at least 25% of the shares of Nano Alloys, Inc.

2. The Court finds that division of this asset "in kind" would be unjust, unreasonable and inequitable.

3. Accordingly, the Court orders that Respondent be awarded the entirety of the community property interest in Nano Alloys, Inc., Niti Tubes, NiTi Tub, LLC, and Cardinal Cordis Health, subject to the requirement that she pay to Petitioner the sum of $863,419 and that she defend, indemnify, and hold harmless Petitioner from and against any and all claims asserted or unasserted, which have or may be



Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 3 of 17

asserted against him based on any alleged ownership of an interest in Nano Alloys, Inc. or NiTi Tubes or any predecessor entity, or any claims based on the removal of any funds from the accounts of Nano Alloys, Inc. or any other actions with respect to Nano Alloys, Inc., any claims against Ms. Ene for her conduct, or transactions, including any negligence, and including any removal by Petitioner of any amount of money from Nano Alloys, Inc., bank accounts, including the amount of $286,481, which amount is deemed by the Court to be an advance distribution to Petitioner of a portion of his community property interest in Nano Alloys, Inc. and NiTi Tubes.

4. The Court orders that Respondent reimburse Petitioner $100,000 for the portion of the $286,481 that Petitioner withdrew from Nano Alloys, Inc. and deposited to Respondent's account.

B. **The Family Residence**

1. It is stipulated that the Parties purchased during marriage residential real property located on Ormsby Drive in Sunnyvale (the "Family Residence") that has a current value of $2,250,000, which is encumbered by a loan in the principal amount of $303,391, leaving equity of $1,946,609. Each Party's interest would be valued at $973,304.50.

2. From and after May 1, 2015, Wife had sole control and use of the Family Residence, which she and the children have occupied ever since. The Court orders that Respondent be credited with one-half of the mortgage, property tax, insurance payments and major repairs that she made to preserve the community interest in the Family Residence in the amount of $112,865.27 (*Epstein* reimbursement).

3. The Parties have stipulated to the Fair Rental Value of the Family Residence of: $5,400/month for 5/1/2015 through 12/31/2017; $5,500 for 1/1/2018 through 12/31/2019; and $5,800/month for 1/1/2020 through 11/30/2020. The

- 3 -
JUDGMENT AFTER TRIAL
Case No. 2015-6-FL014081

Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 4 of 17

Court orders that Respondent reimburse Petitioner for 30% of the Fair Rental Value of the Family Residence from 5/1/2015 through 12/31/2019 and 40% of the Fair Rental Value for the Family Residence from 1/1/2020 through 11/30/2020, which is calculated as $116,960. This Order is not intended to be determinative of any issues related to any claim for support or *Trainotti* credits that may be asserted in connection therewith.

C. **The Canadian Property**

1. The parties stipulated that they own as community property an 8-unit apartment complex located in Quebec, Canada (the "Canadian Property").

2. Title to Canadian Property is held by a Canadian corporation, 6059431 Canada, Inc., the stock of which is owned in equal shares by Husband and Wife. The Canada corporation retains a third-party property manager who is responsible for leasing activity, any capital expenditures, and who maintains Canadian bank accounts into which rents are deposited and from which expenses are paid. Presumably, a portion of the bank accounts may consist of tenant deposits, which are potentially subject to return to the tenants upon vacating the Canadian Property or reserves for the payment of taxes.

3. On October 27, 2020, the Parties stipulated that the community property interest in the Canadian Property is valued as of the date of trial at $508,875. The Court will order that one-half of the real property value ($254,437.50) is credited to each party.

4. The Court will further reserve jurisdiction to modify the Judgment to credit Respondent with one-half of the value of adjusted value of any cash assets of the corporation taking into account any bank account balances, distributions, reserves, advances or distributions being held in that corporation. Effective upon the entry of such modified Judgment, Petitioner shall be granted 100% of the right, title, and

- 4 -
JUDGMENT AFTER TRIAL
Case No. 2015-6-FL014081



Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 5 of 17

interest in the Canadian corporation, 6059431 Canada Inc. and shall thereafter hold harmless, indemnify, and defend Respondent from any subsequent claim, cause of action, or liability, asserted or unasserted, including any claim based on negligence, arising or accruing after that date from the ownership, operation, or management of the Canadian Property.

### D. Reimbursement Claims for Community Expenses

1. After separation, Husband paid $36,417.69 in community property expenses from separate property accounts, consisting of carrying costs and maintenance for the Family Residence and tax liabilities as well as interest and penalties which appear to the Court to be the fault (at least in significant part) of Respondent's unilateral decision to file taxes separately and other lack of cooperation. Husband is entitled to a credit for one-half of these amounts: $18,208.85.

2. Husband's request to divide Bank of America accounts #6739 and #8002 as community property accounts is denied.

3. After separation Wife paid a community tax liability using $3,201 from her personal account. Wife is to be reimbursed one-half of that amount, $1,600.50 by Husband.

4. After separation, Husband deposited to his separate bank account the refund of a $5,000 deposit paid to Tesla before marriage. In addition, after separation, Husband deposited into his separate bank account checks that were written to him by third-parties for what appears to be community claims, e.g. refunds or insurance claim payments totaling $2,708.77. Husband is ordered to reimburse Wife one-half of these amounts: $3854.39.

5. It is not disputed that as of the date of separation the American Express Card in Husband's name had a cash rewards balance of $8,034. Wife shall be credited with one-half that amount: $4017.

Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 6 of 17

E. **Bank and Brokerage Accounts**

   1. The Parties have stipulated to the division of checking, savings, and brokerage accounts which have a total value of $1,606,463, of which $531,844 is community property. Dividing the community portion equally, and taking into consideration agreed upon separate property amounts in the accounts, agreed-upon reimbursements, and post-separation transfers from one spouse to the other, and accounting for the use of $1,395 of community property funds by Husband to pay community expenses for which he is being reimbursed, Husband is credited with $824,445.50 (of which $265,922 is a division of community property); Wife is credited with $782,017.50 (of which $265,922 is a division of community property).

F. **Retirement Accounts**

   1. The Parties have stipulated to a division of their retirement accounts. Pursuant to that stipulation, as of February 2020, the Parties held a total of $1,193,638 in various retirement accounts, of which $920,331 is community property. $750,095 of the community property funds are held in retirement accounts in Husband's name, one-half of which would be subject to transfer to Wife's retirement account under a QDRO. In addition, Wife holds an eTrade account x5634 valued at $20,187, of which $2,493 is community and the balance of $17,635 is separate. Wife's Medtronic 401(k)/ESOP plan holds $69,716 all of which is community property and her Memry/SAES plan holds $98,027, all of which is community property.

   2. Wife would be entitled to receive a QDRO distribution of $375,047.50 (1/2 of community property share of the retirement accounts held in Husband's name). Based on the March 6, 2020 Stipulation and Order re Division of Retirement Accounts, it appears that Husband would be entitled to $715,777.50 and Wife

Case: 21-50901   Doc# 48-2   Filed: 09/27/21   Entered: 09/27/21 18:07:01   Page 7 of 17

would be entitled to a QDRO distribution of $477,860.50 (adjusted for earnings and losses).

G. **Other Community Personal Property**

1. The Court finds that the Tesla automobile is not community property. It is ordered that Wife defend, indemnify, and hold harmless Husband against any and all claims arising from her purchase of the Tesla or its use, including any claims for reimbursement by Nano Alloys, Inc.

2. The parties share a Toyota Sequoia that is community property and registered in the names of Darisme Patrice/Ene Princesca with California license plate 5JHF672 and VIN 5TDZ38A32S128004. The Court takes judicial notice of the current Kelly Blue Book valuation of that vehicle which is $5,055. The Toyota Sequoia is awarded to Husband and one half of its current value, $2,527.50 is credited to Wife.

3. There is in the Family Residence household furnishings and fixtures. The Court heard evidence that the estimated value thereof ranges from $5,000 to $15,000. If the Parties cannot come to an agreement with regard to the division of household furnishings and fixtures, the Court will order that each of the children (minor or adult) shall be allowed to retain any clothing, toys, computers, telephones, desks, bedding and bedroom furniture used primarily by that child as his/her personal property. The Parties shall then go to binding arbitration with Family Court Services as to the division of all other community property furnishings and fixtures.

The Table below summarizes the division of the Parties assets prior to any awards or allocations resulting from Petitioner's claims for breach of fiduciary duty.

Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 8 of 17

| Property Division and Reimbursements re Family Residence | Amount Credited to Husband | Amount Credited to Wife |
|---|---|---|
| Interest in Ormsby Residential Real Property (stipulated value $2,250,000 – loan of $303,391 = community interest of $1,946,609) | $973,304.50 | $973,304.50 |
| Reimbursement to Wife (5/1/2015-11/30/2020) (*Epstein*) | | $112,865.27 |
| Reimbursement to Husband for Fair Rental Value (5/1/2015-11/30/2020) adjusted by 20% per minor child (*Watts*) | $116,960 | |
| **Other Property Division and Related Reimbursements** | | |
| Interest in Canadian Property (per 10/27/2020 stip, equity is $678,500 Canadian or $508,875 USD | $254,437.50 | $254,437.50 |
| Ordered reimbursement to Husband for ½ post-separation payment of community expenses | $18,208.85 | |
| Ordered reimbursement to Wife for ½ post-separation payment of community expenses | | $1,600.50 |
| Ordered reimbursement to Wife for one-half of Tesla refund of $5,000 and post-separation community checks deposited in Husband's account | | $3,854.39 |
| Ordered reimbursement to Wife for one-half of AmEx cash rewards balance | | $4,017 |
| Adjusted Stipulated Division of Bank Accounts (includes separate property shares of each spouse | $824,445.50 | $782,017.50 |
| Division of Retirement Accounts Buy-out of Wife's share of community property interest of all retirement accounts in Husband's name (3/6/2020 Stipulation and Order) to be adjusted based on earnings/losses since Feb. 2020 | $715,777.50 | $477,860.50 |

- 8 -
JUDGMENT AFTER TRIAL
Case No. 2015-6-FL014081

Case: 21-50901   Doc# 48-2   Filed: 09/27/21   Entered: 09/27/21 18:07:01   Page 9 of 17

| | | |
|---|---|---|
| Toyota Sequoia awarded to Husband, credit to wife | | $2,527.50 |
| **Subtotal of non-Nano Alloys Property Division and Reimbursements** | $2,903,133.85 | $2,612,484.66 |
| Nano Alloys community property disposition and reimbursements | | |
| Buy-out of Husband's Interest in Nano Alloys, Inc.; Wife keeps interest in Nano Alloys, Inc. and holds harmless Husband | $863,519 | |
| Reimbursement to Husband for $100,000 of the $286,481 removed by Husband from Nano Alloys in September 2015 and deposited in Wife's account | $100,000 | |

## II. Petitioner's Breach of Fiduciary Duty Claims re Community Property Interest in Nano Alloys dba NiTi Tubes

### A. Transfer of Nano Alloys, Inc. Stock to Wilson Eng

1. The Court finds that Respondent/Wife breached her fiduciary duties to Petitioner by transferring or purporting to transfer 50% of the stock of Nano Alloys, Inc. dba NiTi Tubes to Wilson Eng.

2. There is not clear and convincing evidence of fraud in connection with the transfers to Mr. Eng.

3. Accordingly, pursuant to Family Code §1101(g), the Court awards Petitioner the amount of $2,402,645.70 (25% of the business value as of December 31, 2017) plus attorneys' fees and court costs in connection with proving the breach of fiduciary duty for the transfer to Wilson Eng of 50% of the ownership of Nano Alloys, Inc. which the Court finds as follows:

4.

| | |
|---|---|
| Hammon Law Firm (for 9/11/15 to 3/1/20): | $ 35,601.89 |
| Bergeson Law Firm: | $ 88,808.52 |

| MHTB (Butera) | $ 47,481. |
| Sally White | $ 4,250 |
| Total | $176,141.41 |

**B. Reduction of Value of Nano Alloys, Inc.**

1. The Court finds that Petitioner has met his burden of showing by clear and convincing evidence that Respondent engaged in "malice, oppression and fraud", in order to reduce the value of Nano Alloys, Inc. from its value as an ongoing business ($9,610,583 as of December 31, 2017) to $6,000,000, the reported cash in the bank at the commencement of trial.

2. Pursuant to Family Code § 1101(h), Petitioner is hereby awarded damages in the amount of $1,805,291.50, the amount by which the remaining 50% community property interest (after the transfer to Mr. Eng) was damaged as a result of Respondent's course of conduct.

**C. Sanctions Pursuant to Family Code §271**

The Court awards Petitioner sanctions against Respondent only (not her counsel) under Family Code section 271 for her bad faith and dilatory conduct in connection with the division of the stock of Nano Alloys, Inc. and the valuation of that community asset, as follows:

| Hammon law offices | $10,815 |
| Bergeson Law Firm: | $59,803.75 |
| Sally White: | $ 31,478.50 |
| MHTB (Butera) | $ 4,946. |
| Total | $107,043.25 |

## III. Disposition

Pursuant to the foregoing and the Statement of Decision, the Court HEREBY ORDERS, ADJUDGES AND DECREES THAT JUDGMENT ON THE RESERVED ISSUES OF BREACH OF FIDUCIARY DUTY AND DIVISION OF PROPERTY BE ENTERED AS FOLLOWS:

A. Wife shall buy-out Husband's 25% interest in Nano Alloys, Inc. for the sum of $863,519, which amount shall be an offset against the division of community property assets as between the Parties. Wife shall defend, indemnify, and hold harmless Petitioner from and against any and all claims asserted or unasserted, which have or may be asserted against him based on any alleged ownership of an interest in Nano Alloys, Inc. or NiTi Tubes or any predecessor entity, or any claims based on the removal of any funds from the accounts of Nano Alloys, Inc. or any other actions with respect to Nano Alloys, Inc., any claims against Ms. Ene for her conduct, or transactions, including any negligence, and including any removal by Petitioner of any amount of money from Nano Alloys, Inc., bank accounts, including the amount of $286,481.

B. Wife shall pay Husband $100,000 as reimbursement for the monies deposited in Wife's bank account from the $286,481 Husband removed from Nano Alloys, Inc.

C. Husband is awarded $2,402,645.70 under Family Code §1101(g) for damages caused by Wife's breaches of fiduciary duty in connection with her transfer or purported transfer of 50% of the shares of Nano Alloys, Inc. to Wilson Eng.

D. Husband is awarded $1,805,291.50 under Family Code §1101(h) for damages caused by Wife's breaches of fiduciary duty in connection with her actions that resulted in the reduction in the value of Nano Alloys, Inc. between December 31, 2017 and the date of trial.

E. Husband shall be awarded as his sole and separate property the Family Residence at 1406 Ormsby Drive, Sunnyvale, Ca. Title and possession shall be transferred to Husband on the *later* of June 30, 2021 or thirty days following the effective date of an

Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 12 of 17

order for child support. From December 1, 2020 until the date of such transfer, Wife shall be responsible for paying the mortgage, property tax and insurance, maintaining the property in good condition, and paying to Husband the amount of $1,933 per month (the difference between the current rental value and the current mortgage plus impounds). Upon the date of transfer of title and possession, the amount of $973,304.50, representing the value of Wife's community property interest in the Family Residence, will be credited against the amounts owed by Wife to Husband under this Judgment.

F. If the Parties cannot come to an agreement with regard to the division of household furnishings and fixtures, the Court will order that each of the children (minor or adult) shall be allowed to retain any clothing, toys, computers, telephones, desks, bedding and bedroom furniture used primarily by that child as his/her personal property. The Parties shall then go to binding arbitration with Family Court Services as to the division of all other community property furnishings and fixtures.

G. On or before April 30, 2021, Husband shall provide the Court and serve on Wife an accounting for all non-property assets of the Canadian corporation. Wife shall have until the later of 20 calendar days from service of that accounting, or May 15, 2021 to provide any response to the Court. If the parties cannot agree on how to handle the Canada accounts by May 31, 2021, the Court shall set a hearing at the earliest mutually agreeable date thereafter to hear evidence with regard to the valuation of all assets of the Canadian corporation. The Court will thereafter enter a modified Judgment including the account for all non-property assets of the Canadian corporation. Effective as of the date of the modified Judgment which includes the accounting for all non-property assets of the Canadian corporation, Husband shall be awarded as his sole and separate property all right, title, and interest in the Canadian corporation, 6059431 Canada, Inc., including the Canadian property and the operating bank accounts associated therewith. Upon the date of transfer of title and possession, the amount of $254,437.50, representing the value of

Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 13 of 17

Wife's community property interest in the Canadian Property, plus any community property interest of Wife in any cash assets of the Canadian corporation as determined by the Court, will be credited against the amounts owed by Wife to Husband under this Judgment.

H. Husband shall be awarded as his sole and separate property all bank accounts, retirement accounts and investment accounts, in his name or in the name of both Husband and Wife, effective as of December 31, 2020, and is responsible for providing account statements as of that date to Sally White and Katie Sims, so the professionals can calculate the exact amount of the credits against the amounts owed by Wife to Husband under this Judgment that Wife will be given for the award of her community property interest in those accounts. Accounts awarded as sole and separate property of husband include, but are not limited to:

1. *Etrade* Account #4324 in the name of Patrice W Darisme & Princesca N Ene
2. *Etrade* Account #6757 in the name Patrice W Darisme & Princesca Ene
3. *Schwab* Account #4354 in the name Patrice W Darisme
4. *Bank of America* Account #9770 in the name Patrice F Darisme & Princesca N Ene
5. *PROSPER FUNDING LLC* Account in the name Pat Darisme
6. *Charles Schwab* IRA #8154 in the name Patrice W Darisme
7. *Fidelity Hitachi Vantara* 401(k) at *Fidelity* in the name Patrice Darisme
8. *Fidelity Advanced Micro Devices* 401(k) at *Fidelity* in the name Patrice Darisme
9. *Fidelity Hewlett Packard Enterprise* 401(k) at *Fidelity* in the name Patrice Darisme

I. The Parties are ordered to meet and confer to determine if ownership of the retirement accounts in Wife's name can be transferred to Husband under the terms of the

applicable plans and, if so, how they should be valued, or if it will be necessary to prepare QDRO orders, in which case the maximum portion of those plans shall be assigned to Husband. Upon the date of transfer, the value of Wife's community property interest in the transferred amounts as determined by accountants Sally White and Katie Sims shall be credited against the amounts owed by Wife to Husband under this Judgment. Retirement accounts in Wife's name to be reviewed and the entirety or maximum portion transferred to Husband include, but are not limited to:

1. *Medtronic ESOP & SRP plan* at *Vanguard* in the name of Princesca Ene
2. *Medtronic Savings and Investment plan* at *Fidelity* in the name of Princesca Ene
3. *Memry SAES SMA 401(k) Plan* in the name of Princesca Ene
4. *Etrade #5634* IRA in the name of Princesca Ene
5. *Etrade #575* IRA in the name of Princesca Ene
6. *Etrade #915* IRA in the name of Princesca Ene
7. T-Rowe Price 401(k) in the name of Princesca Ene

J. All reimbursements owing from Husband to Wife for Epstein amounts, division of the Canadian corporation and Canadian real property, and division of other assets and accounts, are hereby ordered to be offset against the amounts owed by Wife to Husband under this Judgment.

K. The transfers of assets between the Parties as ordered hereby are intended to be incident to the divorce and not a taxable event pursuant to IRC section 1041.

L. The amounts owed by Wife to Husband after application of the credits and offsets that have been determined or stipulated to as of the date of this Judgment, shall be entered as a monetary Judgment owing from Wife to Husband, with all unpaid amounts bearing interest at the rate of 10% per annum starting April 1, 2021. However, no interest shall accrue as to the amounts to be credited against the Judgment for transfer of the Family

- 14 -
JUDGMENT AFTER TRIAL
Case No. 2015-6-FL014081

Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 15 of 17

Residence or the Canadian corporation even if those transfers have not occurred by April 1, 2021. Likewise, no interest shall accrue as to the amounts to be credited against the Judgment as to the division of household furnishings and fixtures until such issue is resolved pursuant to the procedures outlined in Section F; and no interest shall accrue as to the amounts to be credited against the Judgment as to the division of the retirement accounts in Wife's name until such issue is resolved pursuant to the procedures outlined in Section I.

M. Actions of both parties shall be governed by the Enforcement of Judgments Law but if statutes of the Family Law Code are in conflict therewith either party shall have the rights and remedies available to them and may make an appropriately noticed Motion concerning said conflict.

N. Respondent shall pay to Petitioner Attorneys' Fees and Costs pursuant to Family Code §1101(g) in the amount of $176,141.41.

O. Respondent shall pay to Petitioner as sanctions under Family Code section 271 for Respondent's bad faith and dilatory conduct in connection with the division of the stock of Nano Alloys, Inc. and the valuation of that community asset the amount of $107,043.25.

IT IS SO ORDERED AND ADJUDGED.

Dated: 28 April 2021

By: /s/ Roberta S. Hayashi
Roberta S. Hayashi
JUDGE OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA

Case: 21-50901    Doc# 48-2    Filed: 09/27/21    Entered: 09/27/21 18:07:01    Page 16 of 17



# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SANTA CLARA

DOWNTOWN COURTHOUSE
191 NORTH FIRST STREET
SAN JOSÉ, CALIFORNIA 95113
FAMILY JUSTICE CENTER



FILED
MAY 03 2021
Clerk of the Court
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

RE: Patrice W. Darisme and Princesca N. Ene
CASE NUMBER: 2015-6-FL-014081

## PROOF OF SERVICE

- FINDINGS AND ORDER AFTER HEARING

-AMENDED TENTATIVE RULING AND PROPOSED STATEMENT OF DECISION RE ATTORNEYS' FEES AND PRELIMINARY INJUNCTION

Modified
-PRELIMINARY INJUNCTION

-JUDGMENT AFTER TRIAL

were delivered to the parties listed below in the above entitled case as set forth in the sworn declaration below.

**DECLARATION OF SERVICE BY MAIL:** I declare under penalty of perjury that I served this notice by enclosing a true copy in a sealed envelope, addressed to each person whose name is shown below, and by depositing the envelope with postage fully pre-paid, in the U.S. Mail at San Jose, CA on May 03, 2021. CLERK OF THE COURT, by Melanie Bueno, Deputy.

cc: Walter P Hammon  75 E Santa Clara St  Ste 1400  San Jose CA  95113
John David Pernick  111 North Market Street  Ste 600  San Jose CA  95113
Cory Hammon  31 N Second St Suite 260  San Jose CA  95113
Shannon Stein  438 South Murphy Ave  Sunnyvale CA  94086
Pamela Schuur  438 South Murphy Ave  Sunnyvale CA  94086

**DECLARATION OF SERVICE BY E-MAIL:** I declare under penalty of perjury that I served this notice and documents by email to each person whose name is shown below at the email address shown below on May 03, 2021 CLERK OF THE COURT, by Melanie Bueno, Deputy.

John Pernick <jpernick@be-law.com>; wphammonlawoffice@gmail.com <wphammonlawoffice@gmail.com>; Cory Hammon <coryhammon@gmail.com>; shannon@shannonsteinlaw.com <shannon@shannonsteinlaw.com>; Pamela Schuur <pamela.schuur@comcast.net>

CW-9027 REV 12/08/16